PEOPLE v NORWOOD

PEOPLE V HAGAR

Docket Nos. 310312 and 310424. Submitted October 1, 2013, at Detroit. Decided October 10, 2013. Approved for publication December 17, 2013, at 9:20 a.m.

The 36th District Court, Willie G. Lipscomb, Jr., J., denied a prosecution motion to bind over John J. Norwood and Nicole M. Hagar on a charge of pandering, MCL 750.455. The Wayne Circuit Court, Annette J. Berry, J., affirmed the denial of the motion. The prosecution appealed separately by leave granted in the Court of Appeals with regard to each defendant. The Court of Appeals consolidated the appeals

The Court of Appeals *held*:

MCL 750.445 delineates eight activities for which a defendant could be charged. The eight activities are separated by the term "or," indicating alternative choices, and each offense does not require the elements of any other offense. MCL 750.445 prohibits an individual "who shall inveigle, entice, persuade, encourage, or procure any female person to come into this state or to leave this state for the purpose of prostitution." There is no requirement that for a conviction under that part of the statute the prosecution demonstrate that defendants caused the undercover officer to "become a prostitute." Defendants' conduct of offering to further entice the officer into prostitution by engaging her in an interstate practice, sending her to Florida with promises of clothing, shoes, a residence, and cosmetic enhancement surgery was prohibited by the statute. The district court erred by failing to order defendants bound over. The order of the circuit court is reversed and the matter is remanded to the circuit court for reinstatement of the charge against each defendant and for proceedings consistent with the opinion of the Court of Appeals.

Reversed and remanded.

CRIMINAL LAW — PANDERING.

The statute prohibiting pandering delineates eight activities for which a defendant can be charged under the statute; the eight

activities are separated by the term "or," indicating alternative choices with each offense not requiring the elements of any other offense (MCL 750.455).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Kym Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Daniel E. Hebel*, Assistant Prosecuting Attorney, for the people.

*Valerie R. Newman* for John Norwood.

*Neil J. Leithauser* for Nicole Hagar.

Before: M. J. KELLY, P.J., and WILDER and FORT HOOD, JJ.

PER CURIAM. The prosecution appeals by leave granted the circuit court order affirming the district court's denial of the prosecution's motion to bind over defendants on a charge of pandering, MCL 750.455.[1] We reverse and remand to the circuit court for reinstatement of the charge against each defendant and for proceedings consistent with this opinion.

On April 8, 2011, an officer with the special operations unit of the Wayne County Sheriff's Office was working as an undercover decoy in the city of Detroit in response to complaints of prostitution. A Lincoln Navigator was driven nearby and the vehicle's passenger, defendant Nicole Marie Hagar, motioned for the officer to approach the vehicle. The vehicle's driver, defendant John Julius Norwood, spoke first and asked the officer how old she was. Defendants conversed with the officer

---

[1] On April 10, 2013, we consolidated the appeals to "advance the efficient administration of the appellate process." *People v Norwood*, unpublished order of the Court of Appeals, entered April 10, 2013 (Docket Nos. 310312; 310424).

and exchanged information regarding what they wanted her to do. Specifically, defendant Norwood offered to buy the officer new clothes, new shoes, a new residence, and cosmetic enhancement surgery in exchange for her work as a prostitute. The couple indicated that the officer could earn more money working for Norwood as a prostitute in Florida and that she would leave with defendant Hagar that night. Defendants also represented that defendant Norwood was good to work for and that defendant Hagar earned $1,000 a night. They also stated that the officer could earn extra money by engaging in the production of pornography with defendant Hagar. Defendants were arrested by other sheriff's officers. Following these proofs, the district court denied the prosecution's motion to bind defendants over on the charge of pandering, MCL 750.455, and the circuit court subsequently affirmed. We granted the prosecution's applications for leave to appeal.[2]

A district court's bindover decision that is contingent on the factual sufficiency of the evidence is reviewed for an abuse of discretion. *People v Redden*, 290 Mich App 65, 83; 799 NW2d 184 (2010). A circuit court's review of the bindover decision involves examination of the entire preliminary examination record, and it may not substitute its judgment for that of the lower court. *People v Beydoun*, 283 Mich App 314, 322; 770 NW2d 54 (2009). However, "[t]his Court reviews de novo the bindover decision to determine whether the district court abused its discretion, giving no deference to the circuit court's decision." *Redden*, 290 Mich App at 83. When the district court decision addresses "whether the alleged

---

[2] *People v Norwood,* unpublished order of the Court of Appeals, entered March 6, 2013 (Docket No. 310312); *People v Hagar,* unpublished order of the Court of Appeals, entered March 6, 2013 (Docket No. 310424).

conduct falls within the scope of a penal statute, the issue presents a question of law that we review de novo." *People v Armisted*, 295 Mich App 32, 37; 811 NW2d 47 (2011).

The interpretation and application of a statute presents a question of law that an appellate court reviews de novo. *People v Zajaczkowski*, 493 Mich 6, 12; 825 NW2d 554 (2012). "[T]he intent of the Legislature governs the interpretation of legislatively enacted statutes." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). The intent of the Legislature is expressed in a statute's plain language. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). When statutory language is plain and unambiguous, the Legislature's intent is clearly expressed, and judicial construction is neither permitted nor required. *Id.* The use of the alternative term "or" indicates a choice between two or more things. *Auto-Owners Ins Co v Stenberg Bros, Inc*, 227 Mich App 45, 50; 575 NW2d 79 (1997).

In *People v Morey*, 461 Mich 325, 328; 603 NW2d 250 (1999), our Supreme Court held that the pandering statute delineated eight activities for which a defendant could be charged. The *Morey* Court quoted MCL 750.455 and inserted numerals to delineate the eight different activities:

> "Any person [1] who shall procure a female inmate for a house of prostitution; or [2] who shall induce, persuade, encourage, inveigle or entice a female person to become a prostitute; or [3] who by promises, threats, violence or by any device or scheme, shall cause, induce, persuade, encourage, take, place, harbor, inveigle or entice a female person to become an inmate of a house of prostitution or assignation place, or any place where prostitution is practiced, encouraged or allowed; or [4] any person who shall, by promises, threats, violence or by any device or scheme, cause, induce, persuade, encourage, inveigle or entice an

inmate of a house of prostitution or place of assignation to remain therein as such inmate; or [5] any person who by promises, threats, violence, by any device or scheme, by fraud or artifice, or by duress of person or goods, or by abuse of any position of confidence or authority, or having legal charge, shall take, place, harbor, inveigle, entice, persuade, encourage or procure any female person to enter any place within this state in which prostitution is practiced, encouraged or allowed, for the purpose of prostitution; or [6] who shall inveigle, entice, persuade, encourage, or procure any female person to come into this state or to leave this state for the purpose of prostitution; or [7] who upon the pretense of marriage takes or detains a female person for the purpose of sexual intercourse; or [8] who shall receive or give or agree to receive or give any money or thing of value for procuring or attempting to procure any female person to become a prostitute or to come into this state or leave this state for the purpose of prostitution, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 20 years." [*Morey*, 461 Mich at 328.]

In *Morey*, a jury convicted the defendant of pandering, MCL 750.455, and accepting the earnings of a prostitute, MCL 750.457. *Morey*, 461 Mich at 326. On appeal in the Supreme Court, the Court held that there was insufficient evidence to support the pandering conviction. *Id.* at 326-327. In *Morey*, an undercover police officer had called the defendant's massage service from a motel room. Ultimately, a female arrived and performed massage services, but also negotiated to perform sexual services. After she was arrested, she agreed to cooperate with the police and telephoned the defendant, indicating that the client had requested a second masseuse. A second woman arrived and gave the officer a massage, but also offered to perform sexual services. After the second woman was arrested, she also agreed to cooperate with the police. The police drove the

women to a restaurant where they provided a portion of their earnings to the defendant, who was then arrested. *Id*. at 327-328.

The defendant was charged pursuant to the second clause of the pandering statute; it was alleged that he acted to " 'induce, persuade, encourage, inveigle or entice a female person to become a prostitute[.]' " *Id*. at 329. The Court of Appeals held that this section of the statute penalized defendants who induce females who had not already engaged in prostitution to engage in prostitution. *Id*. Our Supreme Court analyzed the phrase "become a prostitute" and concluded that "to become a prostitute" was distinguishable from performing an act of prostitution. *Id*. at 329-333. Because the prosecution had failed to present evidence that the women were not prostitutes before the defendant employed them and failed to present evidence that the defendant "induced, persuaded, inveigled, or enticed them to become prostitutes," the Supreme Court held that the pandering conviction was properly reversed by the Court of Appeals. *Id*. at 338.

However, our Supreme Court further acknowledged that the pandering statute, compared with other criminal offenses, was designed to punish individuals who prey on innocent females by punishing the conduct with up to 20 years' imprisonment:

> It is reasonable to presume that the Legislature intended to punish separately and more severely those individuals who persuade or attempt to persuade a female to begin performing acts of prostitution. This conduct goes beyond mere facilitation of prostitution—these individuals prey on innocent females, attempting to induce them into a criminal livelihood. Certainly society has a greater interest in protecting innocent victims from taking the first step toward a career of prostitution than it has in preventing further acts of prostitution by those who have already

succumbed to that lifestyle. In light of the degree of harm to society, it is not unreasonable to impose a more severe penalty on the predators of innocent females.

Indeed, each of the eight activities proscribed by the pandering statute describes activities that go beyond similar, but arguably less harmful, activities proscribed elsewhere, suggesting a legislative intent to punish more severely the more harmful activities. For example, procuring females to reside in a house of prostitution, or causing them to remain there, are felonies under the first, third, and fourth clauses of the pandering statute, and are punishable by up to twenty years imprisonment. MCL 750.455; MSA 28.710. This is far more severe than the misdemeanor imposed for merely letting a house, knowing that the lessee intends to use the house for purposes of prostitution, MCL 750.454; MSA 28.709, which carries a penalty of six months in the county jail or a $250 fine. It is reasonable to conclude that those who deal directly with females—bringing them into and causing them to remain in an environment devoted to prostitution—create a greater harm than the person who merely owns the house. Similarly, under the sixth clause of the pandering statute, facilitating *interstate* prostitution activities carries a separate and more severe penalty of up to twenty years imprisonment, MCL 750.455; MSA 28.710, than the misdemeanor imposed for aiding and abetting a single act of prostitution, MCL 750.450; MSA 28.705, MCL 750.451; MSA 28.706, which carries a penalty of up to ninety days in jail or a $100 fine. Each clause of the pandering statute evidences a legislative intent to punish more severely those who make more harmful contributions to prostitution activities. Consequently, it is reasonable to conclude that the Legislature intended to punish more severely those who recruit females into the practice of prostitution than those who merely facilitate a female's existing decision to engage in additional acts of prostitution. [*Morey*, 461 Mich at 335-337.]

The *Morey* Court also noted that the defendant's conduct may have fallen within other provisions of the

prostitution section of the Penal Code as well as activity five of the pandering statute, MCL 750.455 (" 'to enter any place within this state in which prostitution is practiced, encouraged or allowed, for the purpose of prostitution.' "). *Morey*, 461 Mich at 335 n 6. However, the Court acknowledged that charging decisions are not the prerogative of the Court, but are within the sole discretion of the prosecutor. *Id*.

In the present case, the plain language of MCL 750.455 reveals that the district court erred by refusing to bind over defendants on the charge of pandering. MCL 750.455[6] prohibits an individual "who shall inveigle, entice, persuade, encourage, or procure any female person to come into this state or to leave this statute for the purpose of prostitution[.]" The commission of this act constitutes a felony punishable by up to 20 years' imprisonment. MCL 750.455. The eight activities delineated in MCL 750.455, are separated by the term "or," indicating alternative choices, and each offense does not require the elements of any other offense. *Auto-Owners Ins Co*, 227 Mich App at 50. Therefore, there was no requirement that the prosecution demonstrate that defendants caused the undercover decoy to "become a prostitute." Rather, the Legislature intended to more severely punish those who recruit females into a prostitution practice rather "than those who merely facilitate a female's existing decision to engage in additional acts of prostitution." *Morey*, 461 Mich at 337. The undisputed evidence elicited during the preliminary examination indicated that defendants did not intend to merely send additional clients to the undercover officer and, therefore, facilitate an existing decision to engage in the profession of prostitution. Rather, the evidence indicated that defendants offered to further entice the officer into prostitution by engaging her in an interstate practice, sending her to the

state of Florida with promises of clothing, shoes, a residence, and cosmetic enhancement surgery. This interstate conduct was prohibited by the pandering statute. MCL 750.455[6]. Accordingly, the district court erred by failing to order defendants bound over on the charge of pandering.

Reversed and remanded to the circuit court for reinstatement of the charge against each defendant and for proceedings consistent with this opinion. We do not retain jurisdiction.

M. J. KELLY, P.J., and WILDER and FORT HOOD, JJ., concurred.